CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

E. WISTAR WILSON (CABN 324705)
Assistant United States Attorney
CHRISTINE CHEN (327581)
Special Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7200
     FAX: (415) 436-7234
     Wistar.Wilson@usdoj.gov
     Christine.Chen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 4:24-CR-00515-JST** |
| Plaintiff, | **THE UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| VERA YOUNG, | Date: August 15, 2025 |
| | Time: 9:30 a.m. |
| Defendant. | Court: Hon. Jon S. Tigar |

I.       **INTRODUCTION**

     Defendant Vera Young pleaded guilty on March 21, 2025 to one count of Theft of Government Property, in violation of 18 U.S.C. § 641, and one count of Social Security Fraud, in violation of 42 U.S.C. § 408(a)(4). Dkt. 18. Ms. Young is scheduled to be sentenced on August 15, 2025 at 9:30 a.m. before this Court.

     The United States submits this sentencing memorandum to assist the Court in determining the appropriate sentence in this case. In fashioning a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a), the Court must consider a

variety of factors. These factors include, among others, the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter criminal conduct. *See* 18 U.S.C. § 3553(a).

For the reasons articulated below, the Government recommends that the Court sentence Ms. Young to three years of probation with one year of curfew-style home confinement. This sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## II.    OFFENSE CONDUCT

Ms. Young's father died on April 4, 2005. Presentence Investigation Report ("PSR"), Dkt. 21 ¶ 6. Prior to his death, the United States government had sent him Social Security retirement benefits via check and then via direct deposit into an account at Cooperative Center Federal Credit Union ("CCFCU"). *Id.* Ms. Young was a joint accountholder with her father for that account from 1980 until March 31, 2010—nearly five years after his death—when she submitted a request to CCFCU to remove herself as an accountholder. *Id.* Ms. Young signed the request form, but also—while knowing that her father had died—directed a third party to forge her father's signature on the form, such that Ms. Young's deceased father became the sole named accountholder. *Id.* Ms. Young also updated her father's address for the CCFCU account to a P.O. Box that she controlled. *Id.* As a result, Ms. Young continued to receive her father's Social Security retirement benefits deposited monthly into the CCFCU account. *See id.* ¶ 7.

Ms. Young took affirmative steps to deceive the Social Security Administration. *See id.* In February 2020, Ms. Young told a Social Security representative who called her that her father was in a care facility (despite knowing that her father had died fifteen years earlier). *Id.* ¶ 7. When the Social Security representative asked for the name of the care facility and a telephone number where Ms. Young's father could be reached, Ms. Young was reluctant to provide that information, then put the Social Security representative on hold—purportedly to look for the information—and terminated the call. *See id.* She did not respond to multiple follow-up calls and voicemail messages from the Social Security representative. *Id.*

Apparently, the Social Security Administration's inquiries in February 2020 did little to dissuade

Ms. Young.  For an additional four years—through March 22, 2024—Ms. Young continued to collect her father's monthly Social Security benefit checks while knowing that she was not entitled to those funds and failing to disclose her father's death to the Social Security Administration.  *See id.* ¶ 8.  She withdrew those funds for her own use, writing checks from the CCFCU account to herself and to her apartment complex (for rent).  *Id.* ¶ 8.

All told, from April 4, 2025 through March 22, 2024, Ms. Young fraudulently obtained and converted to her own use nearly $300,000 ($299,818) in Social Security benefits.  *Id.* ¶ 8.

Federal agents from the Social Security Administration's Office of the Inspector General interviewed Ms. Young on May 20, 2024.  *Id.* ¶ 9.  During that interview, Ms. Young attempted to deny awareness of her conduct.  She told the agents that she did not recall when her father had died and that she was receiving treatment for a lymph node on her breast[1] and could not recall details.  *Id.*  Ms. Young claimed to be dealing with a significant amount of stress from caring for her brother, whom she said had died "in the past few months;" in reality, Ms. Young's brother had died nearly two years (20 months) earlier, in September 2022.  *Id.* ¶ 9.

In response to agents' questions about the CCFCU account, Ms. Young also attempted to shift responsibility onto her deceased brother.  She claimed ignorance about the deposits going into the CCFCU account, stating that her brother was more involved than she was, and that she "didn't really pay attention."  *Id.* ¶ 10.  Ms. Young claimed not to have known there were any issues with her father's account until she applied for her own Social Security benefits in 2020, at which point she asked her brother about it, and he told her he would take care of the situation.  *Id.* ¶ 10.  She said her brother had assured her that everything was fine and so she did not ask many questions because she trusted him.  *Id.*

Although Ms. Young expressed remorse when told of the approximately $300,000 loss amount and admitted that she had written checks to herself from the CCFCU account as well as to her apartment complex (for rent), she nevertheless continued to claim ignorance of the Social Security deposits going into the account.  *Id.* ¶ 10-11.  In a May 22, 2024 follow-up interview with an agent, she denied any recollection of what she told the Social Security representative on the phone in February 2020.  *Id.* ¶ 12.

---

[1] The PSR does not mention Ms. Young's having a condition with her lymph node or a related treatment.  *See* PSR ¶ 48.

### III.   GUIDELINES CALCULATION

The government agrees with the U.S. Sentencing Guidelines ("Guidelines") calculation set forth by U.S. Probation (and by the parties in the Plea Agreement), which results in a Total Offense Level of 13.  *See* Dkt. 21 at 20; Plea Agreement, Dkt. 19 ¶ 7.  The Guidelines range for a Total Offense Level of 13, for an individual with Criminal History Category I, is 12 to 18 months' imprisonment.  *See* PSR, Dkt. 21 at 20.  Because this range falls within Zone C of the Guidelines' Sentencing Table, the Guidelines do not contemplate a term of probation as an alternative to imprisonment.  *See* U.S.S.G. § 5B1.1, Application Note 2 (noting that where the Guidelines range is in Zone C, "the guidelines do not authorize a sentence of probation."); U.S.S.G. § 5C1.1(d) (providing that for a Guideline range in Zone C, the minimum term can be satisfied by a sentence of imprisonment, or imprisonment with a term of supervised release that substitutes community confinement or home detention, as long as at least half of the minimum term is satisfied by imprisonment).  A sentence of probation, as recommended and discussed below, represents a downward variance from the applicable Guidelines range.

### IV.   SENTENCING RECOMMENDATION

The government recommends that the Court sentence Ms. Young to three years of probation with one year of curfew-style home confinement.  Such a sentence would be sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a)—including promoting respect for the law, reflecting the seriousness of the offense, providing just punishment, and affording adequate deterrence to criminal conduct.  It would accomplish these objectives while also appropriately accounting for mitigating factors applicable to Ms. Young's case.

Ms. Young committed fraud for 19 years (from April 4, 2005 through March 22, 2024), collecting and converting to her own use nearly $300,000 ($299,818) from the U.S. government in funds to which she knew she was not entitled.  She not only knowingly failed to disclose her father's death—a disqualifying event—to the Social Security Administration, but she also took affirmative steps to obscure her involvement in the conduct and deceive the Social Security Administration: directing a third party to forge her father's signature on his CCFCU account in 2010 and taking herself off the account (while switching the address on the account to a P.O. Box she controlled), and lying to a Social Security representative in 2020.  And when confronted by federal agents in 2024 about the theft, Ms. Young

knowingly provided false information, claimed ignorance, and attempted to shift responsibility for the conduct onto her then-deceased brother.

The Court's sentence should account for the duration and continual nature of Ms. Young's conduct. She knowingly received Social Security deposits into the CCFCU account more than 220 times—every month for 19 years. The fraud began when she was fifty years old and continued until she was sixty-nine. The record indicates that although Ms. Young has experienced financial and personal hardship[2] for periods of time in her life, she is—and has been—capable of working to support herself. *See* PSR ¶¶ 46-51. She has some college education and prior work experience, including as a branch manager at Wells Fargo. *Id.* ¶ 53. Yet, it appears that Ms. Young lived on stolen Social Security benefits for the entire 19 years and did not obtain even part-time work; she has not been employed since 2005. *Id.* Ms. Young's crime is the kind of offense that undermines public trust.

A sentence of three years of probation with one year of curfew-style home confinement would balance appropriately the need to advance the goals of sentencing set forth in 18 U.S.C. § 3553(a) while accounting for Ms. Young's history and personal characteristics. Ms. Young does not have other criminal history. She appears to have lived an otherwise law-abiding life and spent time engaged in worthwhile activities and caregiving responsibilities.

The government respectfully disagrees with the defense's position that home confinement is not necessary and would not advance the goals of sentencing. *See* Def. Sent'g Mem., Dkt. 23 at 5. A period of home confinement is necessary to reflect the seriousness of, and provide just punishment for, a multi-year fraud and theft of nearly $300,000, as well as to promote respect for the law and deterrence. The Guidelines suggest a minimum of 12 months' custody for Ms. Young's conduct; a sentence of probation in lieu of custody—even with a period of home confinement—already constitutes a substantial downward variance. Although Ms. Young does owe the Social Security Administration $299,818 in restitution, that debt—and restitution generally—is not punishment, contrary to the defense's claim. *See id.* at 10 (asserting that Ms. Young's restitution will "reflect[] the serious nature of her offense and

---

[2] Ms. Young's letter to the Court references the loss of her family home as a motivating factor in her conduct. Dkt. 23-1. As noted in the PSR, Ms. Young's fraudulent conduct started in April 2005, approximately three years prior to the events precipitating the loss of that home in 2008. PSR ¶¶ 8, 40.

provid[e] just punishment for the funds she unlawfully collected.").  In the government's view, a sentence of three years of probation without any period of home confinement would send a problematic message about the seriousness of—and be far too lenient a consequence for—committing a $300,000 fraud over 19 years.

The government also respectfully disagrees with the defense's request that the Court not impose the standard condition of probation that prohibits associating and interacting with known felons during the term of supervision without the permission of the probation officer.  *See* Dkt. 23 at 2-5; U.S.S.G. § 5B1.3(c)(8).  The Sentencing Commission's inclusion of the felon association condition as a "standard" term of supervision reflects its view of the appropriateness of the condition generally, and of its relation to the goals of deterrence, protection of the public, and rehabilitation.  The seriousness of Ms. Young's conduct, coupled with its long duration, evidences a need for deterrence and rehabilitation in her case. A temporary restriction on Ms. Young's associations during her term of supervision—particularly if the Court or Probation carves out an exception for interactions with her son or other specific family members as appropriate—is reasonable under the circumstances of Ms. Young's case.

The government's sentencing recommendation is consistent with sentences courts in this district have imposed in similar cases.  *See, e.g.*, *United States v. Paul Colvard*, No. 4:18-CR-00544 JD (N.D. Cal.) at ECF 12, 17 (defendant sentenced to 18 months in custody for a $407,007 theft over 28 years from the Social Security Administration); *United States v. Gayle Hart*, No. 3:18-CR-00107 CRB (N.D. Cal.) at ECF 23, 27 (defendant sentenced to three years of probation with ten months of curfew-style home confinement for a $126,068 theft from the Social Security Administration); *United States v. Caria Tomczykowska*, No. 4:18-CR-00046 JST (N.D. Cal.) at ECF 26, 35 (defendant sentenced to three years of probation with ten months of curfew-style home confinement for a $128,464.32 theft from the Department of Veterans Affairs and the Social Security Administration); *United States v. Renee Klionsky*, No. 3:18-CR-00032 CRB (N.D. Cal.) at ECF 23, 29 (defendant sentenced to three years of probation with ten months of curfew-style home confinement and 50 hours of community service for a $110,185.85 theft from the Department of Veterans Affairs).  A sentence of three years of probation with one year of curfew-style home confinement for a theft of nearly $300,000 over a period of 19 years is appropriate in this case.

## V.    CONCLUSION

For the reasons set forth above, a sentence of three years of probation, including one year of curfew-style home confinement, is sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  The government requests that the Court sentence Ms. Young accordingly.

DATED:  August 8, 2025                                    Respectfully submitted,

                                                         CRAIG H. MISSAKIAN
                                                         United States Attorney


                                                          _/s/ E. Wistar Wilson_____
                                                         E. WISTAR WILSON
                                                         Assistant United States Attorney
                                                         CHRISTINE CHEN
                                                         Special Assistant United States Attorney